UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOROTHY WAGNER, as Parent and
Natural Guardian for L.W.

    Plaintiff,

v.                                         Case No: 8:14-cv-1662-T-36AEP

THE SCHOOL BOARD OF POLK
COUNTY and SANDRA DOYLE,

    Defendants.
_____/

## ORDER

This cause comes before the Court upon the Motion for Summary Judgment filed by Defendants, The School Board of Polk County and Sandra Doyle (Doc. 41). Despite this Court's notice (Doc. 42), Plaintiff Dorothy Wagner, as Parent and Natural Guardian for L.W., failed to respond to the Motion, and the time to do so has now expired. The Court, therefore, will treat the Motion as unopposed. Having considered the Motion and being fully advised in the premises, the Court will now GRANT the Motion.

**I.    STATEMENT OF FACTS[1]**

This case relates to an incident that occurred on the playground at Gibbons Street Elementary School in Bartow, Florida. L.W. was a seven year old first grader at the time of the incident. Doc. 33-1 ("D. Wagner Dep.") at 10. Doyle was, and currently is, the physical education teacher at Gibbons Street Elementary. Doc. 34-1 ("Doyle Dep.") at 4-5.

---

[1] The Court derives the following Statement of Facts from the declaration and exhibits submitted in support of Defendants' Motion for Summary Judgment. Because Wagner has not responded, the facts contained therein are considered undisputed and admitted by her. *See* Fed. R. Civ. P. 56(e).

On the day of the incident, during physical education class, two students told Doyle that L.W. had threatened to cut another student with a knife that he had in his pockets. *Id.* at 10-12. Doyle confronted L.W., who pulled out his pockets revealing that he did not have a knife. *Id.* at 12. Doyle placed L.W. in time-out for making the threat, after which L.W. was allowed to rejoin the class. *Id.* at 30. Almost immediately, however, L.W. began spitting on his teammates, so Doyle put him back in time-out. *Id.*

After he was placed in time-out for the second time, L.W. absconded from the time-out area, and climbed inside a tunnel comprised of large semi-truck tires near the edge of the school campus. *Id.* at 17, 21. Doyle approached the area and asked L.W. to come out of the tires and to return to time-out. *Id.* at 22. Doyle then grabbed L.W. by the shoe and pulled him out from the tires. *Id.* at 16. After L.W. was removed from the tires, he showed Doyle a scratch that he had suffered while being removed. *Id.* at 26. Doyle then sent L.W. to the school nurse. *Id.* at 25. Police Officer Jason Griffith later estimated the scratch to be approximately three and a half inches in length. Doc. 36-1 ("Griffith Dep.") at 43.

L.W.'s father met L.W. at the bus stop after school that day. Doc. 32-1 ("C. Wagner Dep.") at 16. At that time, L.W. did not mention anything about the scratch. *Id.* at 16-17. Later, when L.W. was changing his shirt, L.W.'s mother noticed the scratch and asked L.W. about it. D. Wagner Dep. at 13. L.W. told his mother that his teacher had dragged him through a tire. *Id.* The scratch was not bleeding, and L.W. did not complain that it hurt. *Id.* at 14-15. L.W.'s father put some salve on the scratch, but did not take L.W. to the hospital for treatment. C. Wagner Dep. at 75. At a doctor's appointment for a regular checkup a few days later, the doctor told L.W.'s mother that the scratch was healing, and did not otherwise treat the scratch. D. Wagner Dep. at 17-18. L.W.'s injury did not leave any permanent scarring. *Id.* at 19.

Subsequently, L.W.'s parents contacted the Bartow Police Department to press charges against Doyle for battery. Griffith Dep. at 4, 6. During the investigation that ensued, Jane Sohn, a crime scene technician from the Bartow Police Department, inspected the tire tunnel thoroughly. Doc. 35 ("Sohn Dep.") at 14-15. Aside from little pieces of rubber sticking out from a weathered tire rim, Sohn did not find anything sharp inside the tunnel. *Id.* at 43. Similarly, Griffith did not observe anything metallic inside the tires, and noted only that the tires were very rough, weathered, and cracked. Griffith Dep. at 15.

In the operative Complaint,[2] Wagner asserts four counts: Count I alleges that Doyle deprived L.W. of his constitutional rights in violation of 42 U.S.C. § 1983, and Counts II through IV allege state law claims for battery and negligence. *See* Doc. 20 ("Am. Compl."). Defendants now move for summary judgment as to Count I, only.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

---

[2] The operative Complaint is the Second Amended Complaint. *See* Doc. 20.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323.

Even if the nonmoving party fails to respond, however, a court may not grant summary judgment based on the mere fact that the motion was unopposed. *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). Rather, the court must consider the merits of the motion, and grant it only "if appropriate." *Id.* at 1101; *see also* Fed. R. Civ. P. 56(e). Accordingly, although the court "need not *sua sponte* review all of the evidentiary materials on file," it "must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. . . . [and] indicate that the merits of the motion were addressed." *Id.* (quotation marks and citations omitted).

## III. DISCUSSION

Defendants argue that they are entitled to summary judgment because L.W.'s constitutional rights were not injured. Defendants add that Doyle did not act with excessive force and had reasonable justification for her actions.[3] The Court agrees.

At the outset, the Court must "identify the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Defendants

---

[3] Defendants do not argue that Doyle is entitled to qualified immunity.

4

contend that Count I is more properly a claim for excessive corporal punishment, rather than a claim for unreasonable detention or seizure, so it should be analyzed under the Fourteenth Amendment, as opposed to the Fourth Amendment. *See* Doc. 41 at 8; *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (a claim for excessive corporal punishment is analyzed under the Fourteenth Amendment's Due Process Clause.). The Court disagrees. Plaintiff has specifically alleged in Count I that Doyle "seized [L.W.] . . . by applying excessive force for the circumstances presented . . . ." Am. Compl. ¶ 16. And, as the Supreme Court has made clear, "all claims that [governmental authorities] have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395; *see also Garrett v. Athens-Clarke County, Georgia*, 378 F.3d 1274, 1279 n.11 (11th Cir. 2004) (where "[t]he excessive force claims arise from events happening in the course of the arrest," the claims must be analyzed under the Fourth Amendment, not the Fourteenth Amendment). Accordingly, Count I must be analyzed under the Fourth Amendment.[4]

In the Eleventh Circuit, a claim that excessive force was used in the context of a student seizure is analyzed under the reasonableness standard articulated in *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985). *See Alexander v. Bostic*, 458 F.3d 1295, 1304 (11th Cir. 2006). Under the *T.L.O.* reasonableness standard, the legality of a seizure depends "simply on the reasonableness, under all the circumstances, of the [seizure]." *Id.* (quotation marks and citation omitted). A court evaluates reasonableness using a two-step inquiry, and determines first, "whether the action was justified at its inception," and second, "whether the [seizure] as actually conducted was reasonably

---

[4] The Court notes that whether analyzed under the Fourth Amendment or the Fourteenth Amendment, summary judgment in favor of Defendants is appropriate as Doyle's actions were reasonable and do not shock the conscience.

5

related in scope of the circumstances which justified interference in the first place." *Id.* (quotation marks, alterations, and citation omitted); *see also Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012) ("a state official may seize a student at a school so long as the seizure is 'justified at its inception' and is 'reasonably related in scope to the circumstances which justified interference in the first place.'") (citation omitted). "A seizure will be permissible in its scope when the measures adopted are reasonably related to the objectives of the seizure and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Alexander*, 458 F.3d at 1305 (quotation marks, alterations, and citation omitted).

Here, the undisputed facts reveal that the seizure was reasonable "under all the circumstances." *First*, the action was clearly "justified at its inception." L.W. had left the designated time-out area in which he was supposed to stay as punishment for his misbehavior, and had climbed into a tire tunnel near the edge of the school campus. Doyle had verbally asked L.W. to leave the tunnel and return to time-out, and L.W. had refused. Under these circumstances, it was reasonable for Doyle to seek to use physical force to remove L.W. from the tire tunnel. *Second*, the seizure as actually conducted—Doyle pulling on L.W.'s shoe—was "reasonably related in scope to the circumstances that justified interference in the first place." Indeed, pulling on L.W.'s shoe was likely the swiftest and most direct way to remove L.W. from the tunnel and return him to the disciplinary area. Moreover, there is no evidence that Doyle's method posed an unreasonable risk of harm to L.W., as supported by the fact that the police investigation found no evidence that the tire tunnel contained any inherently dangerous elements, such as sharp objects

or metallic wiring.[5]  Therefore, although there may have been other ways to remove L.W. from the tire tunnel, the method employed by Doyle cannot be considered to be unreasonable.

In holding that L.W.'s Fourth Amendment rights were not violated, the Court notes that, at bottom, "unemancipated minors lack some of the most fundamental rights of self-determination—including . . . the right to come and go at will." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995).  Accordingly, "Fourth Amendment rights . . . are different in public schools than elsewhere; [and] the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Id.* at 656.  Doyle's course of action that day—regardless of any *post hoc* judgment as to its wisdom or even prudence—cannot be considered anything other than a reasonable exercise of her custodial responsibility over L.W.  *See Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002) ("[T]he right to make [a seizure] . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.") (quotation marks and citation omitted).  Defendants, therefore, are entitled to summary judgment as to Count I.

Having concluded that Defendants are entitled to judgment in their favor upon the only ground for federal subject matter jurisdiction, the Court now declines to exercise supplemental jurisdiction over the remaining claims, all of which arise under state law.  The Eleventh Circuit has made clear that "once a court decides that it has power to exercise supplemental jurisdiction under [28 U.S.C.] § 1367(a), then the court should exercise that jurisdiction, unless § 1367(b) or (c) applies to limit the exercise." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).  Here, Section 1367(c) applies because the Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  "Where § 1367(c) applies,

---

[5] The fact that the injury sustained by L.W. was very minor is further evidence that, contrary to the allegations in the operative Complaint, there were no sharp objects or metallic wiring inside the tire tunnel at the time L.W. was pulled from the tunnel.

considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett*, 117 F.3d at 1353. The Supreme Court has advised that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

The Court finds that here, where the only federal claim has now been dismissed prior to trial, it would be preferable for Florida's state courts to exercise jurisdiction over the remaining state law claims. *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) ("Both comity and economy are served when issues of state law are resolved by state courts. The argument for dismissing the state law claims in order to allow state courts to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial."); *Baggett*, 117 F.3d at 1353. Further, Wagner will not be prejudiced by the dismissal of her state law claims, as she will be able to timely bring them in state court. *See* Fla. Stat. § 95.11(3)(a) and (o) (four-year statute of limitations for "[a]n action founded on negligence" and "[a]n action for [] battery"). Accordingly, Counts II through IV will be dismissed, without prejudice.

For the reasons discussed above, it is hereby **ORDERED AND ADJUDGED**:

1. Defendants' Motion for Summary Judgment (Doc. 42) is **GRANTED**.

2. The Clerk is directed to enter judgment in favor of The School Board of Polk County and Sandra Doyle as to Count I of the Second Amended Complaint.

3. The remaining Counts are **DISMISSED, without prejudice**, because the Court declines to exercise supplemental jurisdiction over these state law claims.

4. The Clerk is directed to terminate all pending motions and deadlines, and to close this case.

**DONE AND ORDERED** in Tampa, Florida on August 11, 2015.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any